DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB. No. 7986)
aulrich@workandwage.com
Ryan S. Dustin, Esq. (ISB No. 8683)
rdustin@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Rd., Suite B
Idaho Falls, ID 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHAYLYN HINES,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>MAVERIK, INC., a Utah corporation,<br><br>　　　　　　Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

COMES NOW Plaintiff, Shaylyn Hines, by and through counsel of record Casperson Ulrich Dustin PLLC, and for cause of action against Defendant Maverik, Inc., alleges and complains as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.*; and the Idaho Human Rights Act.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367; and 42 U.S.C. § 2000e.

1 - COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district.

## PARTIES

4. Plaintiff Shaylyn Hines ("Hines") is a female citizen and resident of the United States of America, who resides in Rexburg, Idaho.

5. Defendant Maverik, Inc. ("Defendant") is a Utah corporation. Defendant owns and operates 300 locations across 11 western states. Defendant owns and operates three locations in Idaho Falls, Idaho, including the store where Hines worked.

6. At all times material to this Complaint, Defendant regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 42 U.S.C. § 12101, *et seq.*

## FACTS COMMON TO ALL COUNTS

7. Hines realleges and incorporates by reference paragraphs 1 through 6 as though fully set forth herein.

8. Hines began working for Defendant at its Woodruff Avenue Idaho Falls, Idaho location in or about mid October 2019.

9. At all relevant time periods, Hines satisfactorily performed her job duties.

10. In or about mid October 2019, Hines heard from her sister, Amber Hines ("Amber") who works for Defendant, that Defendant was hiring. As a result, Hines spoke with Crystal Hill ("Hill"), Store Director, regarding working for Defendant.

11. Hines told Hill she had been having health issues and needed a job to pay off medical bills and to be able to pay for her medications.

12. Hill asked Hines when she would be able to start work for Defendant. Hines told Hill she was available to start any time.

13. Hill told Hines to return the next day to complete an employment application so Hill could have Hines entered into Defendant's system as a new hire, and watch safety videos.

14. Hines began working as a cashier that same day.

15. Hines began experiencing seizures after she sustained a head injury in car accident in or about May of 2019.

16. On or about October 28, 2019, Hines suffered a mild seizure during her shift at the Woodruff Avenue location. Hines felt the seizure coming on and went to the office to sit down. A co-worker found Hines in the office during the seizure. The co-worker contacted Amber, who lives only a short distance from the Woodruff Avenue location, about what to do. Amber came to the store to help Hines.

17. The seizure passed quickly. However, Hines went home early from her shift that evening.

18. On or about Wednesday, October 30, 2019, Hines suffered another seizure. This time while she was at the cash register. Hines fell to the floor during the seizure. Friends of Amber happened to be in the store at the time of Hines's seizure and contacted Amber. Amber's friends and Hines's coworkers moved Hines to the office.

19. During Hines's seizure Maria Webster ("Webster"), District Manager, arrived at the store. Webster called 911.

20. The paramedics arrived and tended to Hines until the seizure subsided. The paramedics explained to Hines that they could take her to the hospital, but there was most likely not

much the hospital could do for her now that the seizure had passed. Hines chose not to be taken to the hospital.

21. Hines was not scheduled to work the next day and was told to go home to rest.

22. Hines's parents were contacted and came to pick up Hines and her vehicle.

23. Prior to Hines going home, Hill informed Hines that Hines would need to have her health care provider complete a fitness-for-duty form in order or Hines to be able to return to work.

24. Hines was scheduled to work on Friday, November 1 and Sunday, November 3, 2019. However, Defendant refused to allow Hines to work because she was not able to obtain a completed fitness-for-duty form from her health care provider because her healthcare provider's office was not open on those dates due to it being a weekend and being closed on Friday.

25. On or about Monday, November 4, 2019, Hines visited with her health care provider who completed the fitness-for-duty form showing she was able to perform the essential functions of her job.

26. Hines went to work at her scheduled time and gave the completed fitness-for-duty form to Hill.

27. Hill told Hines that she was going to wait to turn in the completed fitness-for-duty paper work to human resources ("HR") because Hill had been talking to HR about Hines's disability.

28. Hill also asked Hines if she had put on her employment application whether or not she had a disability.

29. Hines told Hill she did not believe she listed on her employment application that she suffered from a disability.

30. Hill told Hines not to worry about it, that Hill would talk with HR, and get it figured out.

31. Hines worked the entire November 4, 2019, shift.

32. On or about Tuesday, November 5, 2019, Hines suffered another seizure while at work. Hines's sister and parents were contacted and an ambulance was called. The paramedics tended to Hines until she came out of the seizure. Again, the paramedics told Hines and her family members that there was mostly likely not much the hospital could do for her now that the seizure had passed. Hines chose not to be taken to the hospital and went home for the evening.

33. On or about Wednesday, November 6, 2019, Hines was scheduled to work. However, Defendant again refused to allow her to work stating she needed to have another fitness-for-duty form completed by her health care provider because of the seizure the day before.

34. On or about Thursday, November 7, 2019, Hines visited her health care provider and he completed the second fitness-for-duty form.

35. Hines was given restrictions of not operating a vehicle, crane, tractor, etc. for six weeks and restrictions of no climbing heights and to avoid exposure to heat. None of which was a requirement of her cashier job.

36. On or about Saturday, November 9, 2020, Hines was scheduled to work at the Ammon, Idaho location. However, Hill told Hines she had spoken with the Ammon, Idaho store about Hines. Hill then told Hines not to worry about working the scheduled shift or her scheduled shift on Tuesday, November 12, 2019.

37. On or about Wednesday, November 13, 2019, Hines returned to work at the Woodruff Avenue location. Hines worked the next five weeks without experiencing a seizure, even

while being called in to work additional shifts, one of which was to cover for another employee who has cancer and was not feeling well.

38. On or about Friday, December 20, 2019, Hines suffered a minor seizure during her shift. A co-worker found Hines sitting against a wall and had a supervisor, Suzie Robb ("Robb"), contact Hines's sister Amber to check on Hines. Webster also was present in the store.

39. Hines's younger sister and fiancé also happened to be in the store at the time of Hines's seizure, who were able to assist Hines. The seizure soon passed and Hines returned to her duties.

40. Later that same evening, while Hines was counting her till, Robb approached Hines and told her that Webster had told Robb to send Hines home and that Hines was to return for her scheduled shift the next day.

41. After Hines clocked out Robb attempted to take Hines's vehicle keys away from her and told Hines they were not going to allow her to drive home.

42. Hines had already clocked out from her shift and refused to give her vehicle keys to Robb.

43. Hines worked her scheduled shifts on Saturday, December 21 and Sunday, December 22, 2019.

44. On our about Wednesday, December 25, 2019, during her shift Hines felt a seizure coming on and texted her sister Amber to come help her.

45. Amber came to the store and watched over Hines during the seizure. Hines's seizure appeared to last longer than the others. As a result, Amber contacted their father who came to the store.

46. Hines's seizure finally passed. However, Hines was dazed and confused afterwards. Amber spoke with the manager on shift and together they determined Hines should go home.

47. Hines's father asked Amber to contact Hill to discuss Hines's work schedule.

48. Hill told Hines's father that Hines would not be allowed to work again until she visited with her health care provider and received approval to return to work.

49. As a result, Hines was not allowed to work her scheduled shift on Thursday, December 26, 2019.

50. Due to the holidays, and intervening weekend, the earliest available appointment with her doctor was Thursday, January 2, 2020.

51. On or about December 30, 2019, Hines called Hill to talk with her about her scheduled doctor's appointment. Hill informed Hines she would again need to have her health care provider complete a fitness-for-duty form and to come to the store to pick up the form. Hines told Hill she would pick up the form later that day.

52. Later that day, prior to Hines arriving at the store to pick up the fitness-for-duty form, Hines received a call from Hill. Hill told Hines she had spoken with HR and Webster and that they decided to terminate Hines's employment with Defendant because Defendant could not have "someone" around Hines at all times to accommodate her, that Hines was too big of a liability for Defendant, and that it was not safe for Hines to work for Defendant any longer.

53. On or about February 24, 2020, Hines, dually filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Idaho Human Rights Commission.

54. On or about March 2, 2020, Hines received a Notice of Right to Sue from the EEOC.

55. Hines has exhausted her administrative remedies.

## COUNT I
## VIOLATION OF THE AMERICANS WITH
## DISABILITIES ACT AMENDMENTS ACT/IDAHO HUMAN RIGHTS ACT
## (DISABILITY DISCRIMINATION)

56. Hines realleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57. Hines had a disability as defined by the ADAAA in that she had an actual disability, a record of disability, or was regarded as disabled by Defendant.

58. Hines was qualified for her job as a cashier, and was able to perform the essential functions of her job.

59. During a seizure, Hines's disability substantially limits one or more major life activities, including her ability to focus, concentrate, sleep, walk, talk, and work.

60. Hines was subjected to adverse employment action by Defendant when it discharged Hines on or about December 30, 2019, on the basis of her disability.

61. As a direct and proximate result of Defendant's actions and/or failure to act, Hines has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Hines is thereby entitled to general and compensatory damages in an amount to be proven at trial as well as any other equitable remedies available to her.

62. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Hines's federally protected rights, for which Hines is entitled to punitive damages.

## COUNT II
## VIOLATION OF THE AMERICANS WITH
## DISABILITIES ACT AMENDMENTS ACT/IDAHO HUMAN RIGHTS ACT
## (FAILURE TO ACCOMMODATE)

63. Hines realleges and incorporates by reference paragraphs 1 through 62 above, as though fully incorporated herein.

64. Hines requested a reasonable accommodation for her disability including not operating a vehicle, crane, tractor, etc., no climbing heights, and limited exposure to excessive heat.

65. Defendant provided a reasonable accommodation initially by allowing Hines to go to the office until the seizure passed. However, Defendant later refused to continue to provide any reasonable accommodation, and instead, terminated Hines's employment.

66. As a direct and proximate result of Defendant's actions and/or failure to act, Hines has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Hines is thereby entitled to general and compensatory damages in an amount to be proven at trial as well as any other equitable remedies available to her.

67. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Hines's federally protected rights, for which Hines is entitled to punitive damages.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT/IDAHO HUMAN RIGHTS ACT
### (RETALIATION)

68. Hines realleges and incorporates by reference paragraphs 1 through 67 above, as though fully incorporated herein.

69. Hines engaged in protected activity when she reported her disability and requested a reasonable accommodation for her disability.

70. By terminating her employment, Defendants subjected Hines to an adverse employment action subsequent to Hines engaging in protected activity.

71. Such adverse action constitutes retaliation against Hines for engaging in protected activity.

72. As a direct and proximate result of Defendant's actions and/or failure to act, Hines has suffered and will continue to suffer a loss of earnings and other employment benefits and job

opportunities. Hines is thereby entitled to general and compensatory damages in an amount to be proven at trial as well as any other equitable remedies available to her.

73. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Hines's federally protected rights, for which Hines is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## ATTORNEY'S FEES

74. As a further direct and proximate result of Defendant's actions and/or failures to act, Hines has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which Defendants should be required to pay pursuant to 42 U.S.C. § 12205 and 42 U.S.C. § 2000e-5(k), *et seq.*

## DEMAND FOR JURY TRIAL

Hines demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Hines seeks judgment against Defendants as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2. For punitive damages;

3. For attorney's fees pursuant to statute and costs of suit; and

4. For such other and further relief as the Court deems just and proper.

Dated this 15th day of April, 2020.   /s/ _____
                                      Ryan S. Dustin
                                      CASPERSON ULRICH DUSTIN PLLC